First case today is People v. Brandon Boling for the Appellant, Mr. Andrews, and for the Applee, Ms. Sheppard. You may proceed. Please the court, my name is Alan Andrews. I represent Mr. Boling. I guess we're here, we all are well aware that all four of his claims are defaulted or forfeited, whichever term I prefer. So I guess I'll just start by discussing whether or not plain error occurred under the evidence that's close prong of the plain error test. And I think it makes sense to consider whether or not the evidence was close, because if it wasn't, then obviously there's no plain error and his claims cannot be considered, cannot get him any relief, cannot get him a new trial. You know, this is your typical, sadly, sexual abuse case of a child. There are no eyewitnesses other than the complainant. There's no physical evidence at all. There's no chance that the defendant could make the evidence not close by establishing an alibi or anything like that, because the state changed the charge against him from occurring within one month to within ten months. So obviously he can't present an alibi that would cover ten months. You know, Mr. Boling never confessed to the crime when he was interrogated by the police. He took the stand, testified, denied assaulting K.A. You know, there's nothing in particular that the state has pointed to about his testimony that is particularly unbelievable. It's basically a swearing contest. Who did the jury believe? And, you know, that's now I would get to the prejudice about, you know, these types of errors. Every one of these errors either bolstered K.A., the complainant, bolstered her credibility, or painted Mr. Boling as a monster, or did both. For example, for bolstering the complainant's credibility, the sexual assault nurse examiner testified that K.A. identified Mr. Boling as the person who assaulted her. There was much evidence about a purported assault on A.W., who was the complainant's cousin. And that, of course, would bolster K.A.'s credibility by making Mr. Brandon be a serial sexual assaulter with a propensity to commit sexual assault. What's the problem with that? The problem is that it can't be admitted under Section 115-10 because it's not about the sexual assault on K.A. It's about a sexual assault on somebody else that did not occur at exactly the same time. What about the decision in this court 20 years ago in Embry? Why doesn't that demonstrate that what happened in this case is what K.A. said is admissible? Embry was the one, I mean, it was a simultaneous assault. I mean, it occurred, I mean, the other victim was being assaulted at exactly the same time as the victim of the charges were against. And here, even if you look at the best evidence, you know, most of the time K.A. never said that she was assaulted at any time even remotely near when this supposedly happened to A.W. But there was a statement to Nurse Cope, I believe it was, that after the A.W. thing, Mr. Boling came out and grabbed K.A. and took her in. But again, that's not simultaneous like the other case where one girl was grabbed in the defendant's head. You're right that in Embry it was essentially simultaneous, but this court and subsequent courses hold that that was the requirement? I think that that must be the requirement. Why? Because otherwise it's not part of the assault, the charged assault. Constituting a matter of detail pertaining to the offense perpetrated against herself is how the statute speaks. It doesn't speak of its acts as charged, does it? Well, it's been interpreted to refer to the acts that were charged by the decisions I cited. Embry's 20 years old. In my brief, there are cases saying that it's limited to that. Also, the acts against somebody else are not pertinent to the offense that's been perpetrated against K.A. here unless they're simultaneous.  Peck. 1996, this court's decision following up on Embry. That was the one where... But that was another simultaneous one. Was that the case where she's looking at the tree and she's sitting in the tree and sees somebody else being assaulted? That's another case which I think supports Embry because that was not a simultaneous assault on the complainant. That is what happened here where K.A. is testifying that she saw somebody else assaulted, but she was not being assaulted at that time and it was inadmissible. Well, counsel, let's look at the facts of this case that we have before us. We have an issue where the child was hiding and she heard this other child being taken into the bedroom and heard this other child crying out and indicated that she hid because she thought the same thing might happen to her and she assumed that what had happened to her in the past was happening to her cousin, correct? Yes. How does that not constitute a matter or detail pertaining to any act which is an element of the offense which is the subject of the prosecution? Well, because if nothing happened to her, then there's no element of the offense. Again, these cases have said it's simultaneous. It's not simultaneous. Now, she was assaulted shortly after that. He took her in the room after that. She did tell Nurse Cope that, but no one else. But again, that's my position. It's after, it's not the same, and under these Peck and Embry it's not admissible because it doesn't, what happened to her cousin doesn't explain what happened to her. It wasn't, what happened to somebody else isn't what was perpetrated against her. So that's the best I can explain on that. It doesn't really explain what happened to her. Now, the statute does state that a complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution. Now, whatever happened to A.W. is not an element of this offense, obviously. It's not subject of this prosecution. So, again, the cases have held it. Unless it's simultaneous, it doesn't pertain to the elements of the offense that's the subject of the prosecution. Okay. Let's see. The, I guess, the sexual assault nurse examiner should also not have testified that she believed that K.A. was truthful when she complained. Now, is that really what the nurse said? Yeah, I think so, yeah. What was her statement? That she gave a credible history? Right. And then in prosecution, you know, in the closing argument, the prosecutor characterized it, says that it was a, she stated that it was a very credible statement. Noel Cope certainly seemed to believe it. So that's how it was presented to the jury as a, as Nurse Cope testifying that it was a credible statement. Would it be fair to say that the prosecution kind of elaborated and expanded the nurse's statement? Well, let's see. Yeah, Nurse Cope testified she felt that the oral history was credible. I don't see how, I mean, I don't see how actually that changes anything. She's giving her opinion that the complainant is telling the truth. So when she says that the history is credible, she's saying that the witness is credible. I don't see how there's any distinction between saying K.A. was telling the truth or saying she's credible. And, you know, like I said, you know, the prosecutor did present it. I don't know that it's an elaboration or not. To me, both are incorrect because Nurse Cope, you know, wasn't qualified as a witness on, you know, being able to evaluate the credibility of child sexual assault victims or, you know. So I would say that, you know, that her statement was improper. And whether or not the state elaborated on it, it just simply increased the prejudice. The third issue, the statements that revealed that Mr. Brandon, there are obviously previous, Mr. Bowling, there are obviously previous allegations of sexual assault against him. You know, K.A.'s aunt, Ryan Reardon, her statements kind of, you know, doesn't really reveal. I mean, you know, the jury can infer, but since she didn't actually state what the cousin told her, you know, that's probably not bad. But it sets up the problem with K.A.'s mother, Jamie Burwell, where, you know, she testified that she was told about some stuff that Brandon had been accused of. And that actually was Brandon's first name, not me messing it up. So, you know, the mother's statement clearly is inadmissible hearsay, you know, revealing that Mr. Bowling had been accused of, you know, sexually assaulting other people. And obviously, that's very prejudicial. You know, it paints him as a serial abuser. And, you know, it increases K.A.'s credibility by implying, you know, that she must be telling the truth if other people had been sexually assaulted by Mr. Bowling. I guess I've tried to answer your questions. I've covered the three issues I think are most important and explained why the evidence is close. I'd be glad to answer any other questions. There don't appear to be any. Thank you. Ms. Shepard? May I please report? This court, of course, ordered supplemental briefing and directed us to have argument in this case. So my focus was on the subject of the supplemental briefing. I can reiterate the arguments that I made in my brief about how the evidence was not close and how there was no plain error. But I would reemphasize that the state had no burden to make that argument. The state also didn't have any burden to assert forfeiture. As to opposing counsel's characterization of the evidence, again, the statements about defendants supposedly being accused of other offenses, there was no such testimony. The record shows that. It was not hearsay because it was offered to not prove the truth of the matter asserted but instead to show why the victim's aunt had the good-touch, bad-touch conversation with the victim. Why was that necessary or important? It was just to show how things developed and why that was the first time that the victim, K.A., had made those statements. Why was it important? I mean, we're talking how old was K.A. at the time? Eight years old. Okay. So is a good-touch and bad-touch conversation with a child a conversation that – isn't that a conversation that parents might have at some point in any event? Yes, Your Honor. So why was it necessary to bring out any evidence to explain why they had the conversation when they didn't? To establish why K.A. made those statements, the circumstances under which K.A. made the first outcry because that was the first time that she reported to her family what happened. And, again, this evidence – Well, maybe I'm not being clear. My question is – I'm sorry. I'm not understanding. Burwell is the mother, is she not? Okay. So she has this conversation after speaking with her sister, K.A.'s aunt, Reardon. I believe it was the aunt who had the conversation, but anyway. I think you're right. Okay. So Ann has this conversation, and as a result of this conversation, K.A. then reveals the defendant's misconduct. Correct. What was the need to provide the motivation for Reardon's having the conversation with K.A.? So that it would make sense to the jury. Otherwise it would come out – And the jury otherwise would conclude, gee, a conversation like this would not otherwise occur, and why would it happen? I would assert that it's always relevant, the circumstances under which the victim makes her outcry. It might be in explaining a police officer's investigation. I went to, what did you do, officer? I did A, B, and C in the course of the investigation, otherwise leading the jury to wonder what's going on and how did this all happen. That's the explanation on why it's not hearsay to explain course of conduct. The need to explain course of conduct about Ann's discussion with her niece, about good touch, bad touch, is rather less apparent. So there's the question about the need for that prerogative value, and then we're dealing with some significant prejudicial effect there. Well, the state would respectfully disagree, Your Honor, that it's offered not to talk about the good touch, bad touch conversation per se, but why is that conversation important? It's when K.A. made her outcry. That was the first time, and that's very important to establish in sex abuse and sexual assault cases, as the court well knows of children. Counsel, I have a question for you. Reardon testified that Fernandez asked to have this conversation with her about some things about the defendant that concern the girls, correct? Yes. And that was, thank you, Justice Holder-White, that was the next point I was going to make, that this is not prejudicial in the way that opposing counsel is characterizing it. The statements that he's talking about are that, according to the aunt, Fernandez asked to talk with her privately about some things about defendants, and then, according to the mother, she and the aunt had a conversation about some stuff that the defendant had been accused of. So that's the extent of it. Did Fernandez indicate that it was something about the girls to Reardon? No, no. She did not indicate that Fernandez said he wanted to have a conversation with her about something that concerned the girls? No, he did not. He just, that was only what the, as I recall the record, and that would be another reason, as you point out, that it would not be prejudicial. So some stuff that the defendant had been accused of? Mm-hmm. What's the inference from that? Well, the inference could be, and the state did talk about this in its brief, that it was something relating to good touch, bad touch. But, again, you know, it was something that was not objected to in the vast scheme of things. This is not something that would have tipped the scales of justice against defendant. The evidence, it was a boatload of evidence against him. Well, had the prosecutor or the defense attorney or the judge been apparently aware of 25 years of discussion by this court on Cameron hearings, and when you wish to offer evidence to explain the course of an investigation, how you're supposed to call to the attention of the court to discuss the scope and necessity, and such a conversation occurred in advance of trial, how much of this do you suppose would have been properly admitted? It's, and I think that the Supreme Court's decision in, I think it was Bush, kind of comes into play there. When you're talking about the admission of evidence, if the defendant does not object to the foundation for that evidence, he can't come back later and say, well, there were problems, there was other evidence that should have been admitted. Somehow this, to support the admission of this evidence that I'm now claiming for the first time on appeal, has been erroneously admitted. I think that's one of those situations that applies to much of the evidence in this case. We have to remember that not only did the defendant not object to trial and didn't object in his post-trial motion on the grounds that he asserts on appeal, but also this was, most of this evidence was admitted, not what we're talking about now, after Section 115-10 hearing. There were all sorts of opportunities for him to object, and now he's saying, well, this was error. Well, that's an interesting point, because you're right. This stuff was revealed at the 115-10 hearing, and defense counsel and the prosecutor and the judge listened to it all, and still no one says, gee, how necessary is it that we go into this, and what's the scope of this? To explain why it is, the aunt would ask about good touch, bad touch to an 8-year-old girl. We have to bring out that she had heard information from Fernandez about the nature of some stuff that the defendant had been accused of, and the conversation was in the context of you ought to be aware of that in the girls. And again, going back to the question I asked you, had a Cameron hearing been actually held, what argument would you make, Ms. Shepard, as to why any of that was necessary? Well, going back to the argument that I've already made, that this is important to know. The jury wouldn't understand why the auntie is talking to her without hearing that, you know, this guy, you've heard some stuff about him that's, some stuff that he's been accused of, so you better talk to A.W. and see, make sure she understands about good touch, bad touch. You don't think that would carry with it an implication that the defendant has done this before with other little girls? And if so, then the question is, exactly how necessary is it? It's a two-part test, the scope and how necessary. Well, it's hard to go back and say what might have happened at a hearing to admit this evidence, because no one objected to this, this judge didn't say anything. For all that we make of that, I think that the Supreme Court's decision, and I hope it's Bush, I think that's the one, that says that, you know, if you're talking about admission of evidence and there's foundation issues, there are all these things that, who knows, maybe defense counsel knew about other things, maybe the trial court or the prosecutor was also aware of other things, and would have known that the result of such a hearing would have been the same. We don't know that. And it's unfair to come back on appeal and say there's error in all of this admission of evidence, that the state, if there was some problem, could have cured at the trial level. There's also an issue that came up about Nurse Cope, where she testified to A.W.'s telling her that after the incident with her cousin, or K.A. told her about after the incident with her cousin A.W. that the defendant then sexually abused K.A. herself. I think that the, I'm sorry. That came in through Nurse Cope's testimony. The problem was, and again, you know, you look at a record like this and think, what are people thinking? And again, I don't mean to be critical of you, Ms. Shepard. You weren't the trial counsel. But the prosecutor never included any of these statements in the 115-10 motion for admissibility as hearsay statements. Yes. So any statements that she is making would have to be admissible, hearsay only admissible under 115-13, would they not? Yes. And the state argued that they were. And they clearly are, the state would assert. It is part of the diagnosis and treatment. And there was never any testimony as to what actually happened to A.W. K.A., in fact, testified, I don't know what happened to A.W. She just talked about before this stuff happened to me, before the defendant did these things to me, took me into my mother's bedroom and did these things immediately before that, he took A.W. into the bedroom. I couldn't get in. I'm not sure if this was through the testimony or through her statements through to other people. But it came in that she tried to get in the door. She couldn't. She pushed against it. And then she tried to open it with her fingernail, which Detective Seiler then went and investigated and made a videotape of himself actually opening the door with his fingernail and showing that it did open inward. So that was some of the corroboration of K.A.'s statements. The evidence is not closely balanced. The state had no burden of establishing that, and the problems that may have arisen at trial, we can't make the assumption that the attorneys didn't know something about something else that could have been admitted to cure whatever error there might have been. The state would argue that there was no error, and any error would not have made a difference. Of course, it's not the state's burden to establish harmless error because we don't have any preserved issues or appeal. Unless the court has any further questions. There don't appear to be any. Thank you. Mr. Andrews. I don't have much to add. Ms. Peck was the case where she was sitting in the tree and saw the assault. This court said that it was not contemporaneous. So currently I would say that the law is it has to be at the same time. It's the same thing in a way about Nurse Cope identifying Mr. Bolling. Currently the law is that it's only relevant for treatment if it's a family member or someone who resides with the victim. And Mr. Bolling is a mere visitor, so I would argue that he does not fall within that exception. As to whether or not the questions or whether or not it was necessary to explain why she was asked about good touches or bad touches, that was in my brief and Justice Steigman covered it better than I could. I just think anybody would understand that that happens all the time now. You've been at this a long time, Mr. Andrews. I'm sorry. Yes, I have. Have you ever seen in the record anywhere a judge or the prosecutor saying, gee, let's have a Cameron hearing? Yeah. Really? That's why I preface it by saying you've been at this a long time. I've had a Fifth District case recently where it would have been the greatest case of all time were it not for the trial judge insisting on doing things. The trial judge what? Insisting on doing things about what the state wanted to admit into evidence in the sexual assault case. So the trial judge raised this to his sponsor? Took over the case basically and ruined my appeal, yes. Well, thank you for your care there, Mr. Andrews. Thank you. We'll take this matter under advice. We're just going to recess until the readiness.